In the United States District Court
for the Northern District of Illinois
Eastern Division

| | |
|---|---|
| Michael Anderson,<br><br>*On behalf of himself and those similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>Ozark Pizza Company, LLC; Eric Murphy; Kirk Brown; Doe Corporation 1-10; John Doe 1-10;<br><br>Defendants. | Civil Case No.<br><br>Jury Demand Endorsed Hereon |

# Class and Collective Action Complaint

1. Michael Anderson, on behalf of himself and similarly-situated individuals, brings this action against Defendants Ozark Pizza Company, LLC; Eric Murphy; Kirk Brown; Doe Corporation 1-10; and John Doe 1-10 ("Defendants"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly-situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq*. ("IMWL"), and the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, *et seq*. ("IWPCA").

2. Defendants own and/or operate approximately 50 Papa John's Pizza locations ("Defendants' Papa John's stores") in Illinois, Missouri, Arkansas, and Oklahoma, approximately 15 of which are in Illinois.

3. Upon information and belief, Defendants' Papa John's stores are owned and operated by Papa John's franchise operators Eric Murphy and Kirk Brown.

4. Plaintiff seeks to represent the delivery drivers who have worked at Defendants' Illinois Papa John's stores.

5. Defendants repeatedly and willfully violated the Fair Labor Standards Act, the IMWL, and the IWPCA by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wages for all hours worked.

6. All delivery drivers at Defendants' Papa John's stores, including Plaintiff, have been subject to the same or similar employment policies and practices.

**Jurisdiction and Venue**

7. Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

8. Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's Illinois state law claims.

9. Venue in this Court is proper under 28 U.S.C. § 1391(b) because Plaintiff resides in this district.

## Parties

**Plaintiff**

**Michael Anderson**

10. Plaintiff Michael Anderson is a resident of Round Lake Beach in Lake County, Illinois.

11. Plaintiff is an "employee" of all of the Defendants as defined in the FLSA and K.R.S. § 337.010, *et seq*.

12. Plaintiff has given written consent to join this action.

**Defendants**

13. Defendants' Papa John's stores are owned and/or operated by a number of entities and individuals, each of whom employs Plaintiff and the Delivery Drivers.

**Ozark Pizza Company, LLC**

14. Ozark Pizza Company, LLC is incorporated in Oklahoma.

15. Ozark Pizza Company, LLC does business in Illinois.

16. Ozark Pizza Company, LLC's principal office is in Tulsa, Oklahoma.

17. Ozark Pizza Company, LLC is an Oklahoma domestic for-profit corporation.

18. Ozark Pizza Company, LLC is authorized to do business under the laws of Illinois.

19. Ozark Pizza Company, LLC is owned and/or operated by Defendant Eric Murphy.

20. Ozark Pizza Company, LLC is owned and/or operated by Defendant Kirk Brown.

21. Upon information and belief, Ozark Pizza Company, LLC primarily functions to operate the stores within Defendants' Papa John's operation. For example, Ozark Pizza Company,

LLC appeared on Plaintiff's paystubs during his employment as delivery drivers at Defendants' Papa John's store at 1276 N Illinois 83, Grayslake, Illinois.

22. Upon information and belief, Ozark Pizza Company, LLC owns and operates approximately 50 Papa John's stores in Illinois.

23. Together, Ozark Pizza Company, LLC, Eric Murphy, and Kirk Brown make up the Defendants' Papa John's operation.

24. Defendants' Papa John's operation has the authority to and does hire and fire employees, supervise and control the work schedules and conditions of employees, determine the rate and methods of pay, and/or maintain employee records.

25. Defendants form a "single employer" as they are part of a single integrated enterprise and/or they are joint employers as they jointly operate a chain of Papa John's franchise stores and maintain interrelated operations, centralized control of labor relations, common management, and common ownership and financial control. Because the work performed by Plaintiff and all other Delivery Drivers benefited all Defendants and directly or indirectly furthered their joint interests, Defendants are collectively the joint employers of Plaintiff and other similarly situated employees under the FLSA's definition of "employer."

26. Ozark Pizza Company, LLC has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

27. Ozark Pizza Company, LLC directly or indirectly controls the terms and conditions of Plaintiff's work and the work of similarly situated employees.

28. Ozark Pizza Company, LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

29. Ozark Pizza Company, LLC is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

30. Ozark Pizza Company, LLC has been and continues to be an enterprise engaged in the "production of goods for commerce" within the meaning of the phrase as used in the FLSA.

31. Ozark Pizza Company, LLC has gross revenue that exceeds $500,000 per year.

**Eric Murphy**

32. Defendant Eric Murphy is the owner of Ozark Pizza Company, LLC and Defendants' Papa John's stores.

33. Eric Murphy is a resident of Illinois.

34. Upon information and belief, Eric Murphy is a Papa John's Pizza franchisee.

35. Upon information and belief, Eric Murphy has entered into franchise agreements with Papa John's International, Inc. relating to each of Defendants' Papa John's stores.

36. Upon information and belief, Eric Murphy is an owner of Ozark Pizza Company, LLC.

37. Eric Murphy is a registered Manager for Ozark Pizza Company, LLC's operations in the State of Illinois.

38. Eric Murphy is the President of Ozark Pizza Company, LLC.

39. Eric Murphy is the Chief Operating Officer of Ozark Pizza Company, LLC.

40. Eric Murphy operates multiple Papa John's stores across Oklahoma, Arkansas, Missouri, and Illinois.

41. Eric Murphy is individually liable to the delivery drivers at Defendants' Papa John's stores under the definitions of "employer" set forth in the FLSA, IMWL, and the IWPCA because he owns and operates Defendants' Papa John's stores, serves as a president and owner of Ozark Pizza Company, LLC, ultimately controls significant aspects of Defendants' Papa John's stores' day-to-day functions, and ultimately controls compensation and reimbursement of employees. 29 U.S.C. § 203(d).

42. Upon information and belief, Eric Murphy is the franchisee of Defendants' Papa John's stores.

43. At all relevant times, by virtue of his role as owner and president of Defendants' Papa John's stores, Eric Murphy has had financial control over the operations at each of Defendants' Papa John's stores.

44. At all relevant times, by virtue of his role as owner and president of Defendants' Papa John's stores, Eric Murphy has a role in significant aspects of Defendants' Papa John's stores' day to day operations.

45. At all relevant times, by virtue of his role as owner and president of Defendants' Papa John's stores, Eric Murphy has had control over Defendants' Papa John's stores' pay policies.

46. At all relevant times, by virtue of his role as owner and president of Defendants' Papa John's stores, Eric Murphy has had power over personnel and payroll decisions at Defendants' Papa John's stores, including but not limited to influence of delivery driver pay.

47. At all relevant times, by virtue of his role as owner and president of Defendants' Papa John's stores, Eric Murphy has had the power to hire, fire and discipline employees, including delivery drivers at Defendants' Papa John's stores.

48. At all relevant times, by virtue of his role as owner and president of Defendants' Papa John's stores, Eric Murphy has had the power to stop any illegal pay practices that harmed delivery drivers at Defendants' Papa John's stores.

49. At all relevant times, by virtue of his role as owner and president of Defendants' Papa John's stores, Eric Murphy has had the power to transfer the assets and liabilities of Ozark Pizza Company, LLC.

50. At all relevant times, by virtue of his role as owner and president of Defendants' Papa John's stores, Eric Murphy has had the power to declare bankruptcy on behalf of Ozark Pizza Company, LLC.

51. At all relevant times, by virtue of his role as owner and president of Defendants' Papa John's stores, Eric Murphy has had the power to enter into contracts on behalf of Ozark Pizza Company, LLC.

52. At all relevant times, by virtue of his role as owner and president of Defendants' Papa John's stores, Eric Murphy has had the power to close, shut down, and/or sell each of Defendants' Papa John's stores.

53. At all relevant times, by virtue of his role as owner and president of Defendants' Papa John's stores, Eric Murphy had authority over the overall direction of each of Defendants' Papa John's stores and was ultimately responsible for their operations.

54. Defendants' Papa John's stores function for Eric Murphy's profit.

55. Eric Murphy has influence over how Defendants' Papa John's stores can run more profitably and efficiently.

**Kirk Brown**

56. Defendant Kirk Brown is the owner of Ozark Pizza Company, LLC and Defendants' Papa John's stores.

57. Kirk Brown is a resident of Oklahoma.

58. Upon information and belief, Kirk Brown is a Papa John's Pizza franchisee.

59. Upon information and belief, Kirk Brown has entered into franchise agreements with Papa John's International, Inc. relating to each of Defendants' Papa John's stores.

60. Upon information and belief, Kirk Brown is an owner of Ozark Pizza Company, LLC.

61. Kirk Brown is a registered Manager for Ozark Pizza Company, LLC's operations in the State of Illinois.

62. Kirk Brown is the Vice President of Ozark Pizza Company, LLC.

63. Kirk Brown operates multiple Papa John's stores across Oklahoma, Arkansas, Missouri, and Illinois.

64. Kirk Brown is individually liable to the delivery drivers at Defendants' Papa John's stores under the definitions of "employer" set forth in the FLSA, IMWL, and the IWPCA because he owns and operates Defendants' Papa John's stores, serves as a president and owner of Ozark Pizza Company, LLC, ultimately controls significant aspects of Defendants' Papa John's stores' day-to-day functions, and ultimately controls compensation and reimbursement of employees. 29 U.S.C. § 203(d).

65. Upon information and belief, Kirk Brown is the franchisee of Defendants' Papa John's stores.

66. At all relevant times, by virtue of his role as owner and vice president of Defendants' Papa John's stores, Kirk Brown has had financial control over the operations at each of Defendants' Papa John's stores.

67. At all relevant times, by virtue of his role as owner and vice president of Defendants' Papa John's stores, Kirk Brown has a role in significant aspects of Defendants' Papa John's stores' day to day operations.

68. At all relevant times, by virtue of his role as owner and vice president of Defendants' Papa John's stores, Kirk Brown has had control over Defendants' Papa John's stores' pay policies.

69. At all relevant times, by virtue of his role as owner and vice president of Defendants' Papa John's stores, Kirk Brown has had power over personnel and payroll decisions at Defendants' Papa John's stores, including but not limited to influence of delivery driver pay.

70. At all relevant times, by virtue of his role as owner and vice president of Defendants' Papa John's stores, Kirk Brown has had the power to hire, fire and discipline employees, including delivery drivers at Defendants' Papa John's stores.

71. At all relevant times, by virtue of his role as owner and vice president of Defendants' Papa John's stores, Kirk Brown has had the power to stop any illegal pay practices that harmed delivery drivers at Defendants' Papa John's stores.

72. At all relevant times, by virtue of his role as owner and vice president of Defendants' Papa John's stores, Kirk Brown has had the power to transfer the assets and liabilities of Ozark Pizza Company, LLC.

73. At all relevant times, by virtue of his role as owner and vice president of Defendants' Papa John's stores, Kirk Brown has had the power to declare bankruptcy on behalf of Ozark Pizza Company, LLC.

74. At all relevant times, by virtue of his role as owner and vice president of Defendants' Papa John's stores, Kirk Brown has had the power to enter into contracts on behalf of Ozark Pizza Company, LLC.

75. At all relevant times, by virtue of his role as owner and president of Defendants' Papa John's stores, Kirk Brown has had the power to close, shut down, and/or sell each of Defendants' Papa John's stores.

76. At all relevant times, by virtue of his role as owner and president of Defendants' Papa John's stores, Kirk Brown had authority over the overall direction of each of Defendants' Papa John's stores and was ultimately responsible for their operations.

77. Defendants' Papa John's stores function for Kirk Brown's profit.

78. Kirk Brown has influence over how Defendants' Papa John's stores can run more profitably and efficiently.

**Doe Corporation 1-10**

79. Upon information and belief, Defendants own, operate, and control other entities and/or limited liability companies that also comprise part of Defendants' Papa John's stores, and

qualify as "employers" of Plaintiff and the delivery drivers at Defendants' Papa John's stores as that term is defined by the FLSA.

80. Upon information and belief, Eric Murphy owns and/or operates, in whole or in part, other entities that make up part of Defendants' Papa John's operation.

81. Upon information and belief, Kirk Brown owns and/or operates, in whole or in part, other entities that make up part of Defendants' Papa John's operation.

82. Upon information and belief, the franchisor, Papa John's International, Inc., may also be liable as an employer of the delivery drivers employed at Defendants' Papa John's stores.

83. The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**John Doe 1-10**

84. Upon information and belief, there are additional individuals who also qualify as "employers" of Plaintiff and the delivery drivers at Defendants' Papa John's stores as that term is defined by the FLSA.

85. Upon information and belief, Eric Murphy has entered into co-owner relationships with other persons, and those individuals might also qualify as "employers" of Plaintiff and the delivery drivers at Defendants' Papa John's stores as that term is defined by the FLSA.

86. Upon information and belief, Kirk Brown has entered into co-owner relationships with other persons, and those individuals might also qualify as "employers" of Plaintiff and the delivery drivers at Defendants' Papa John's stores as that term is defined by the FLSA.

87. The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**Facts**

**Class-wide Factual Allegations**

88. During all relevant times, Defendants have operated Defendants' Papa John's stores.

89. Plaintiff and the similarly situated persons Plaintiff seek to represent are current and former delivery drivers at Defendants' Papa John's stores.

90. All delivery drivers employed at Defendants' Papa John's stores have essentially the same job duties.

91. Upon information and belief, Defendants' delivery drivers have been paid at or around Illinois minimum wage (currently $11.00) for the hours they worked inside the store.

92. Upon information and belief, Defendants' delivery drivers have been paid at or around Illinois minimum wage minus a tip credit for the hours they worked completing deliveries.

93. In 2021, for example, Defendants' delivery drivers were paid at or around $6.60 per hour when on the road making deliveries.

94. At all relevant times, Defendants failed to properly compensate delivery drivers for all hours worked.

95. At all relevant times, Defendants have failed to pay Plaintiff and similarly situated delivery drivers the legally required minimum wage and overtime wages because they failed to adequately reimburse them for their automobile expenses or other job-related expenses.

96. When delivery drivers left the store with an order to deliver, they were to be "clocked out" to their tipped wage in Defendants' tracking system.

97. Otherwise, while in the store, delivery drivers were to be paid at their "inside" rate for work completed inside the store in a non-tipped capacity.

98. However, Defendants regularly and routinely "clocked out" delivery drivers to their tipped wage before orders were ready to deliver.

99. Delivery drivers were then required to continue working in a non-tipped capacity while being paid their tipped wage.

100. Defendants' managers and supervisors "clocked out" delivery drivers early to improve their own performance numbers and ratings.

101. As a result, Defendants have failed to properly take a tip credit from delivery drivers' wages.

102. Defendants require delivery drivers at Defendants' Papa John's stores to provide cars to use while completing deliveries for Defendants.

103. Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

104. Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing charges, licensing and registration costs, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

105. Pursuant to such requirements, Plaintiff and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, financing, licensing, and

registration charges, and incur cell phone and data charges all for the primary benefit of Defendants.

106. Upon information and belief, Defendants generally reimbursed delivery drivers at a rate of $0.26 per mile.

107. In early April 2021, Defendants began to reimburse delivery drivers at a rate of $0.28 per mile.

108. Defendants' Papa John's stores do not track or record the delivery drivers' actual expenses.

109. Defendants' Papa John's stores do not collect receipts from their delivery drivers related to the expenses they incur while completing deliveries.

110. Defendants do not collect receipts of delivery drivers' gasoline purchases during weeks when the delivery drivers worked for Defendants.

111. Defendants do not collect receipts of delivery drivers' automobile maintenance, repair, and parts purchased or paid for during weeks when the delivery drivers worked for Defendants.

112. Defendants do not collect receipts of delivery drivers' monthly or annual automobile insurance costs.

113. Defendants do not collect receipts of delivery drivers' automobile registration costs.

114. Defendants do not collect receipts of delivery drivers' automobile financing or purchase costs.

115. Defendants do not collect any other receipts from delivery drivers related to the automobile expenses they incur as delivery drivers at Defendants' Papa John's stores.

116. Defendants' Papa John's stores do not reimburse their delivery drivers based on the actual expenses the delivery drivers incur.

117. Defendants' Papa John's stores do not reimburse their delivery drivers for the actual expenses delivery drivers incur.

118. Defendants' Papa John's stores do not reimburse their delivery drivers at the IRS standard business mileage rate.

119. Defendants' Papa John's stores do not reasonably approximate the delivery drivers' expenses.

120. Defendants' Papa John's stores' reimbursement payments result in reimbursements that are less than a reasonable approximation of actual expenses.

121. Defendants' Papa John's stores' reimbursement payments result in reimbursements that are less than the IRS standard business mileage rate for each mile driven.

122. According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

a. 2017: 53.5 cents/mile
b. 2018: 54.5 cents/mile
c. 2019: 58 cents/mile
d. 2020: 57.5 cents/mile
e. 2021: 56 cents/mile

123. The delivery drivers at Defendants' Papa John's stores have incurred even more in expenses than those contemplated by the IRS standard business mileage rate—*e.g.*, cell phone and data charges.

124. As a result of the automobile and other job-related expenses incurred by Plaintiff and other similarly situated delivery drivers, they were deprived of minimum wages and overtime wages guaranteed to them by the FLSA and Illinois law.

125. Defendants also deduct costs for uniforms from their delivery drivers' wages.

126. Defendants have applied the same or similar pay policies, practices, and procedures to all delivery drivers at Defendants' Papa John's stores.

127. Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

128. Defendants have willfully failed to pay federal and Illinois state minimum wage and overtime wages to Plaintiff and similarly situated delivery drivers at Defendants' Papa John's stores.

**Plaintiff's Individual Factual Allegations**

129. Plaintiff has worked at Defendants' Papa John's store in Grayslake, Illinois from the time that Defendants began operating the store in or around 2017 until present.

130. Plaintiff typically works 35 to 45 hours per week.

131. Plaintiff is paid at or around Illinois minimum wage while working in a non-tipped capacity inside the store.

132. Plaintiff is paid a tipped wage while outside the store making deliveries.

133. Defendants routinely "clock out" Plaintiff to his tipped wage rate before orders are ready to take for delivery.

134. As such, Plaintiff is required to work inside the store in a non-tipped capacity at his tipped wage rate at different times.

135. Upon information and belief, Plaintiff is "clocked out" early approximately 3 times per day for approximately one minute each time.

136. Upon information and belief, Defendants deducted the cost for Plaintiff's uniform from his wages.

137. Plaintiff is required to use his own car to deliver pizzas.

138. From approximately 2017 until approximately April 2021, Plaintiff was reimbursed at a rate of $0.26 per mile for each mile driven when completing deliveries.

139. From approximately April 2021 to present, Plaintiff has been reimbursed at a rate of $0.28 per mile for each mile driven when completing deliveries.

140. Plaintiff is required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

141. Plaintiff is required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone service, GPS service, automobile financing, licensing and registration costs, and other equipment necessary for delivery drivers to complete their job duties.

142. Plaintiff has purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, licensing and registration costs, and incurred cell phone and data charges all for the primary benefit of Defendants.

143. Defendants do not track the actual expenses incurred by Plaintiff.

144. Defendants do not ask Plaintiff to provide receipts of the expenses he incurred while delivering pizzas for Defendants.

145. Defendants do not reimburse Plaintiff based on his actual delivery-related expenses.

146. Plaintiff has not been reimbursed at the IRS standard mileage rate for the miles he drives while completing deliveries.

147. Defendants do not reimburse Plaintiff based on a reasonable approximation of his expenses.

148. Plaintiff completes an average of approximately 2 deliveries per hour.

149. Plaintiff estimates that he drives 6 miles per delivery on average.

150. Because Defendants do not track, keep records of, or reimburse Plaintiff's actual expenses, they were required to reimburse Plaintiff at the IRS standard business mileage rate.

151. In 2020, for example, the IRS business mileage reimbursement was $0.575 per mile.

152. Thus, during 2020, Defendants under-reimbursed Plaintiff by approximately $.315 ($.575 - $.26) per mile. Defendants under-reimbursed him by approximately $1.89 per delivery ($.315 × 6 miles).

153. Accordingly, while making deliveries, Plaintiff consistently "kicked back" to Defendants approximately $3.78 per hour ($1.89 × 2 deliveries per hour).

154. After accounting for time that Defendants clocked Plaintiff out early to his non-tipped wage rate, Defendants failed to pay Plaintiff minimum wage as required by law.

155. After accounting for under-reimbursed expenses, Defendants failed to pay Plaintiff minimum wage as required by law.

156. After accounting for under-reimbursed expenses, Defendants failed to pay Plaintiff 1.5 times his wage for the overtime hours he worked in excess of 40 each week as required by law.

**Collective Action Allegations**

157. Plaintiff brings the First and Second Counts on behalf of himself and all similarly situated current and former delivery drivers employed at Defendants' Papa John's stores owned, operated, and controlled by Defendants in Illinois, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

158. At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked and overtime wages for all hours worked in excess of 40 each week, and failing to reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiff's claims are essentially the same as those of the FLSA Collective.

159. Defendants' unlawful conduct is pursuant to a company policy or practice.

160. Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked, overtime for hours worked in excess of 40 each week, and to fully reimburse for "tools of the trade."

161. Defendants' unlawful conduct has been widespread, repeated, and consistent.

162. The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

163. The FLSA Collective members are readily identifiable and ascertainable.

164. In recognition of the services Plaintiff have rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

**Class Action Allegations**

165. Plaintiff brings the Third, Fourth, and Fifth Counts under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at Defendants' Papa John's stores in Illinois between the date ten years prior to the filing of the original complaint and the date of final judgment in this matter ("Rule 23 Class").

166. Excluded from the Rule 23 Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

167. The number and identity of the Rule 23 Class members are ascertainable from Defendants' records.

168. The hours assigned and worked, the positions held, deliveries completed, and the rates of pay and reimbursements paid for each Rule 23 Class Member are determinable from Defendants' records.

169. All of the records relevant to the claims of Rule 23 Class Members should be found in Defendants' records.

170. For the purpose of notice and other purposes related to this action, their names and contact information are readily available from Defendants.

171. Notice can be provided by means permissible under Rule 23.

172. The Rule 23 Class member are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

173. There are more than 50 Rule 23 Class members.

174. Plaintiff's claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class member in separate actions.

175. Plaintiff and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with the IMWL and the IWPCA.

176. Plaintiff and the Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

177. Plaintiff are able to fairly and adequately protect the interests of the Rule 23 Class and have no interests antagonistic to the Rule 23 Class.

178. Plaintiff are represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

179. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum

simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

180. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

181. Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiff and the Rule 23 Class members individually and include, but are not limited to:

a. Whether Plaintiff and the Rule 23 Class members were subject to a common policy that required them to provide cars to complete deliveries for Defendants;

b. Whether Plaintiff and the Rule 23 Class members were subject to a common automobile expense reimbursement policy;

c. Whether Plaintiff and the Rule 23 Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

d. Whether Defendants reimbursed Plaintiff and the Rule 23 Class members for their actual expenses;

e. Whether Defendants reimbursed Plaintiff and the Rule 23 Class members at the IRS standard business mileage rate for the miles they drove in making deliveries;

f. Whether Defendants properly reimbursed Plaintiff and the Rule 23 Class members;

g. Whether Plaintiff and the Rule 23 Class were actually paid the wage rate and overtime rate they were promised by Defendants after accounting for automobile expenses and reimbursement payments;

h. Whether Defendants failed to pay Plaintiff and the Rule 23 Class in a timely manner as described by the IWPCA;

i. Whether Defendants maintained a policy of "clocking out" delivery drivers early to their tipped wage rates;

j. Whether delivery drivers were required to work, as a matter of policy, at a tipped wage rate when completing non-tipped tasks;

k. The nature and extent of class-wide injury and the measure of damages for those injuries.

182. In recognition of the services Plaintiff have rendered and will continue to render to the Rule 23 Class, Plaintiff will request payment of a service award upon resolution of this action.

## Causes of Action

**<u>Count 1</u>**
**Failure to Pay Minimum Wages - Fair Labor Standards Act**
**(On Behalf of Plaintiff and the FLSA Collective)**

183. Plaintiff restates and incorporate the foregoing allegations as if fully rewritten herein.

184. Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

185. Defendants impermissibly required Plaintiff and the FLSA Collective to "clock out" to their tipped wage rates while still inside the store completing non-tipped tasks.

186. Defendants failed to properly pay Plaintiff and the FLSA Collective for hours worked inside the store.

187. Defendants impermissibly took a tip credit from the wages to Plaintiff and the FLSA Collective.

188. Defendants paid Plaintiff and the FLSA Collective at or close to minimum wage for all hours worked inside the store.

189. Defendants paid Plaintiff and the FLSA Collective at or close to a tipped minimum wage for all hours completing deliveries outside the store.

190. Defendants required and continue to require Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, and failed to properly reimburse Plaintiff and the FLSA Collective for said expenses.

191. By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

192. Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

193. As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count 2**
**Failure to Pay Overtime Wages—Fair Labor Standards Act**
**(On Behalf of Plaintiff and the FLSA Collective)**

194. Plaintiff restates and incorporates the following allegations as if fully rewritten herein.

195. Plaintiff and the FLSA Collective worked more than forty hours in one or more workweeks.

196. Because Defendants required Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, Defendants did not pay Plaintiffs and the FLSA collective at least one and a half times their normal hourly rate for time worked in excess of forty hours per workweek.

197. Defendants paid Plaintiff at the wrong overtime rate.

198. By not paying Plaintiff and the FLSA collective proper overtime wages for time worked in excess of forty hours in a workweek, Defendants have willfully violated the FLSA.

199. As a result of Defendants' willful violations, Plaintiff and the FLSA collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorney's fees.

**Count 3**
**Failure to Pay Minimum Wages – Illinois Minimum Wage Law**
**(On Behalf of Plaintiff and the Rule 23 Class)**

200. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

201. Defendants paid Plaintiff and the Rule 23 Class below minimum wage for the hours they worked by requiring them to cover automobile expenses and other job-related expenses, by taking illegal "kickbacks" from their wages, and by pay them a tipped wage rate while they worked in a non-tipped capacity.

202. Defendants took illegal deductions from the wages of Plaintiff and the Rule 23 Class members to cover the cost of uniforms.

203. Because Defendants required Plaintiff and the Rule 23 Classes to pay for automobile expenses and other job-related expenses out of pocket, Defendants failed to pay Plaintiff and the Rule 23 Class minimum wage.

204. Because Defendants took deductions from the wages of the Plaintiff and the Rule 23 Classes for their benefit, Defendants failed to pay Plaintiff and the Rule 23 Class minimum wage.

205. By not paying Plaintiff and the Rule 23 Class at least minimum wage for each hour worked, Defendants have violated the IMWL.

206. As a result of Defendants' violations, Plaintiff and the Rule 23 Class are entitled to damages, including, but not limited to, statutory damages as defined by 820 ILCS 105/12(a), three times unpaid wages, unreimbursed expenses, 5% interest for each month the underpayment remains unpaid, and attorneys' costs and fees.

**Count 4**
**Violation of IMWL – Unpaid Overtime Wages**
**(On Behalf of Plaintiff and the Rule 23 Class)**

207. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

208. Plaintiff and the Rule 23 Class worked more than forty hours in one or more workweeks.

209. Because they required Plaintiff and the Rule 23 Class to pay for automobile expenses and other job-related expenses out of pocket, Defendants did not pay Plaintiffs and the Rule 23 Class at least one and a half times their normal hourly rate for time worked in excess of forty hours per workweek.

210. By not paying Plaintiffs and the Rule 23 Class proper overtime wages for time worked in excess of forty hours in a workweek, Defendants have violated the Ill. Stat. § 105/4a.

211. As a result of Defendants' violations, Plaintiffs and the Rule 23 Class are entitled to damages, including, but not limited to, statutory damages as defined by 820 ILCS 105/12(a), three times unpaid wages, unreimbursed expenses, 5% interest for each month the underpayment remains unpaid, and attorneys' costs and fees.

**Count 5**
**Violation of the IWPCA – Unpaid Wages**
**(On Behalf of Plaintiff and the Rule 23 Class)**

212. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

213. This Count arises from Defendants' practice of failing to pay Plaintiff and the Rule 23 Class at the wage rate agreed to by the parties.

214. During the course of his employment with Ozark Pizza Company, LLC, Plaintiff had an agreement within the meaning of the IWPCA to be compensated for all hours worked at an agreed upon rate.

215. Other similarly situated employees likewise had an agreement within the meaning of the IWPCA to be compensated for all hours worked at an agreed upon rate.

216. Defendants had a practice of not paying Plaintiff and the Rule 23 Classes at the rate agreed to by the parties. For example, Defendants took "kickbacks" from the wages of Plaintiff and the Rule 23 Class, and failed to properly reimburse Plaintiff and the Rule 23 Classes for the expenses they incurred while making deliveries on Defendants' behalf.

217. Plaintiff and the Rule 23 Classes were entitled to be paid for all time worked at the rate agreed to by the parties.

218. Defendants' practice of failing to pay Plaintiff and the Rule 23 Classes at the rate agreed to by the parties violated the IWPCA.

219. Plaintiff and the Rule 23 Class are entitled to recover all the unpaid wages in violation of the IWPCA made from their earned wages for a period of ten (10) years prior to the filing of this lawsuit. *See* 73 ILCS 5/13-206.

220. As a result of Defendants' violations of the IWPCA, Plaintiff and the Rule 23 Class, are entitled to damages, including, but not limited to, statutory damages as defined by 820 ILCS 115/14, unpaid wages, 2% interest for each month the underpayment remains unpaid, and attorneys' costs and fees.

**Count 6**
**Violation of the IWPCA – Unpaid Reimbursement of Employee Expenses**
**(On Behalf of Plaintiff and the Rule 23 Class)**

221. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

222. Defendants required Plaintiff and the Rule 23 Class to pay for automobile expenses and other job-related expenses out of pocket.

223. Defendants did not reimburse Plaintiff and the Rule 23 Class for all necessary losses incurred by Plaintiff and the Rule 23 Class related to using their vehicles.

224. By not fully reimbursement Plaintiffs and the Rule 23 Class for these expenses, Defendants have violated 820 ILCS 115/9.5.

225. Defendants required Plaintiff and the Rule 23 Class to pay for uniforms they required them to wear while working.

226. Defendants did not fully reimburse Plaintiff and the Rule 23 Class for these uniform costs.

227. By not fully reimbursement Plaintiffs and the Rule 23 Class for these expenses, Defendants have violated 820 ILCS 115/9.5.

228. As a result of Defendants' violations, Plaintiffs and the Rule 23 Class are entitled to damages, including, but not limited to, statutory damages as defined by 820 ILCS 115/14,

unreimbursed expenses, 2% interest for each month the underpayment remains unpaid, and attorneys' costs and fees.

**WHEREFORE**, Plaintiff Michael Anderson prays for all of the following relief:

A. Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members;

B. Unpaid minimum wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations;

C. Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D. Designation of Plaintiff as representative of the Rule 23 Class and counsel of record as Class Counsel;

E. A declaratory judgment that the practices complained of herein are unlawful under the IMWL and the IWPCA;

F. An award of unpaid minimum wages and unreimbursed expenses due under the IMWL and IWPCA;

G. Statutory damages under the IMWL as permitted by 820 ILCS 105/12(a);

H. Statutory damages under the IWPCA as permitted by 820 ILCS 115/14;

I. An award of prejudgment and post-judgment interest;

J. An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees; and

K. Such other legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

*/s/ Erica F. Blankenship*
Andrew R. Biller *(admission forthcoming)*
Andrew P. Kimble *(admission forthcoming)*
Erica F. Blankenship
BILLER & KIMBLE, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*abiller@billerkimble.com*
*akimble@billerkimble.com*
*eblankenship@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiff and the putative class*

## JURY DEMAND

Plaintiff hereby demand a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

*/s/ Erica F. Blankenship*
Erica F. Blankenship